IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF | : | CIVIL ACTION NO. 12-910 |
| James Albert D'Angelo, Sr., and | : | |
| Carolyn Marie D'Angelo | : | Bankruptcy No. 11-14926 |
| | : | Adversary No. 11-00744 |

DuBOIS, J.                                                                                     August 7, 2012

**M E M O R A N D U M**

**I.    INTRODUCTION**

This is a bankruptcy appeal. Debtors James Albert D'Angelo, Senior, and Carolyn Marie D'Angelo (collectively, "Debtors") appeal from a decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania awarding attorneys' fees and costs to J.P. Morgan Chase Bank, N.A. ("JPM"). The award of fees and costs arose from JPM's successful motion to remand to state court a foreclosure proceeding that Debtors had removed to the Bankruptcy Court. Also before the Court are JPM's Motion to Dismiss Appeal, JPM's Motion for Sanctions, and Debtors' Countermotion to Appellees' Motion for Sanctions. For the following reasons, the Court affirms the ruling of the Bankruptcy Court and denies all of the pending motions.

**II.   BACKGROUND**

The facts of the case are set forth at length in the Bankruptcy Court's opinions, see In re D'Angelo, Bankr. No. 11-14926-MDC, Adv. No. 11-00744-MDC, 2012 WL 27541 (Bankr. E.D. Pa. Jan. 5, 2012) (granting motion for fees and costs); In re D'Angelo, Bankr. No. 11-14926-MDC, Adv. No. 12-00301-MDC, __ B.R. __, 2012 WL 2951381 (Bankr. E.D. Pa. July 19, 2012) (denying motion for preliminary injunction), and are repeated here only as necessary to resolve the pending matters.

1

A. **Proceedings Leading to Appeal**

This bankruptcy proceeding arises from a dispute regarding property owned by Debtors in Doylestown, Pennsylvania, on which JPM sought to foreclose in state court. Debtors James D'Angelo, Senior ("Mr. D'Angelo") and Carolyn D'Angelo ("Mrs. D'Angelo") own real estate located at 102 Pickwick Drive in Doylestown, Pennsylvania ("Doylestown property"). In re D'Angelo, 2012 WL 27541, at *1. A mortgage on the Doylestown property, dated August 11, 2005, secured a note of $1,462,500. Id. Through a series of assignments, JPM became the mortgage holder and, on July 3, 2006, filed a foreclosure action in the Court of Common Pleas of Bucks County ("Court of Common Pleas" or the "state court"), J.P. Morgan Chase Bank National Association v. D'Angelo et al., Civil Action No. 2006-6047 ("Foreclosure action"). Id.

Debtors opposed the foreclosure proceedings, asserting that the mortgage and note were invalid because they were forged. Id. Specifically, according to Debtors, James D'Angelo, Junior—Mr. D'Angelo's son, hereinafter "D'Angelo Junior"—obtained a mortgage for $1.5 million with the help of an unscrupulous mortgage lending agent who was later indicted for mortgage fraud. (Debtors' Br. 6; see also United States v. Harry Anthony, Cr. No. 11-12 (W.D. Pa.).) D'Angelo Junior allegedly forged Mr. D'Angelo's name and arranged for a friend to forge Mrs. D'Angelo's name. (Id.) D'Angelo Junior, according to Debtors, then "traded" the $1.5 million mortgage for a second mortgage of $1.88 million. (Id.) JPM sought to foreclose on the second mortgage. (Id.) Debtors sought a declaratory judgment in the Court of Common Pleas, asking that court to hold that the mortgage was "invalid, void, or otherwise unenforceable" due to D'Angelo Junior's forgery. In re D'Angelo, 2012 WL 27541, at *1. The declaratory judgment case, D'Angelo et al. v. JP Morgan Chase Bank, N.A., et al., Civ. Action No. 2007–00041–26–1, was consolidated with the Foreclosure action in Civil Action Number 2006-6047.

On April 11, 2011, the Court of Common Pleas granted partial summary judgment to JPM and imposed an equitable lien of $1,339,387.30 against the Doylestown property ("Equitable Lien").[1]  The Court of Common Pleas ordered Debtors to "confirm" the Equitable Lien within ten days "by executing an amended and restated note and mortgage effective [August 11, 2005] on the same terms and conditions as the August 11, 2005 Note and Mortgage assigned to" JPM.  Docket Entries, J.P. Morgan Chase Bank Nat'l Ass'n v. D'Angelo et al., Civ. No. 2006-6047 (Bucks Cnty. Ct. Com. Pl.) (hereinafter "CCP Docket Entries").  Debtors failed to do so, (Debtors' Br. 7), and, on June 22, 2011, JPM filed a motion in the Court of Common Pleas seeking to hold Debtors in contempt for their noncompliance.  (CCP Docket Entries.)

That same day, Debtors filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania.  In re D'Angelo, 2012 WL 27541, at *1.  That proceeding was later converted to Chapter 11.  Id. at *1 n.1.  The filing of the bankruptcy petition automatically stayed enforcement of the Equitable Lien.  See 11 U.S.C. § 362(a).  According to the Bankruptcy Court, Debtors' counsel "has freely admitted that the Debtors filed for bankruptcy in order to avoid the adjudication of their claims against J.P. Morgan by the Bucks County Court."  In re D'Angelo, 2012 WL 2951351, at *13.

JPM responded by filing a Motion for Relief from Stay in the Bankruptcy Court on July 7, 2011, seeking permission to enforce the Equitable Lien.  In re D'Angelo, 2012 WL 27541, at *1.  The Bankruptcy Court held an evidentiary hearing on the Motion for Relief from Stay on August 4, 2011, and, at the conclusion of the hearing, granted JPM relief from the automatic stay

---

[1] The Equitable Lien was awarded because, inter alia, Debtors' prior mortgage was paid off when D'Angelo Junior obtained the allegedly fraudulent mortgage.  See In re D'Angelo, 2012 WL 2951351, at *7.  Debtors acknowledge that the prior mortgage was valid and enforceable.  Id.  The Equitable Lien amount thus includes the payoff amount of $1 million on the original mortgage plus interest and taxes paid by JPM prior to the imposition of the Equitable Lien.  Id.

3

to seek enforcement of the Equitable Lien in the Court of Common Pleas. Id. On September 1, 2011—before JPM took any action in state court and before a hearing scheduled for September 7, 2011, in state court—Debtors removed the consolidated Court of Common Pleas Case, Civil Action No. 2006-6047, to the Bankruptcy Court pursuant to 28 U.S.C. § 1452.[2] (Notice of Removal, Appellee's Br. Ex. 1.) Debtors filed an Amended Notice of Removal on September 7, 2011, asserting that "[t]here is no justification for forcing Debtors to continue incomplete and expensive state law litigation, which they cannot afford," and that "Debtors' removal is . . . the only practical method whereby Debtors' claims can be resolved and the estate effectively administered." (Amended Notice of Removal, Appellee's Br. Ex. 2, at 6.)

JPM filed a Motion to Remand on September 15, 2011, contending that the "improper removal of the [state court case] is nothing more than a further attempt to derail JP Morgan's exercise of its rights and a continued attempt to forum shop." (Mot. Remand, Appellee's Br. Ex. 3, at 1.) Therefore, JPM argued, remand was appropriate under 28 U.S.C. §§ 1447(c)(2) and 1452(b). (Mem. L. Supp. Mot. Remand, Appellee's Br. Ex. 4, at 4–5.)

The Bankruptcy Court held a hearing on the Motion to Remand on September 29, 2011. At the end of the hearing, the court granted the Motion to Remand. In re D'Angelo, 2012 WL 27541, at *2. It "specifically found that the Debtors' attempt to remove the [state court case] was a patent attempt to relitigate the matters decided by [the Bankruptcy Court] at the Lift–Stay Hearing and that denying remand would have the effect of rendering [the Bankruptcy Court's] Lift–Stay Order a nullity." Id. Noting that "Debtors did not attempt removal concurrent with the

---

[2] Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [the court's bankruptcy jurisdiction as set forth in 28 U.S.C. § 1334]."

4

filing of their petition," the Bankruptcy Court concluded that "Debtors did not legitimately believe the Actions presented issues that should be addressed" in a bankruptcy proceeding. Id. at *3.

At the conclusion of the September 29, 2011, hearing, JPM's counsel asked the Bankruptcy Court to order Debtors to reimburse the fees JPM incurred in litigating the Motion to Remand pursuant to 28 U.S.C. § 1447(c). Id. The Bankruptcy Court ordered the parties to brief the issue of fee reimbursement. After receipt of the parties' submissions, the Bankruptcy Court issued a Memorandum and Order on January 4, 2012, granting JPM's request for $4,715.00 in attorney's fees. Id. The Bankruptcy Court concluded that Debtors "failed to assert any colorable basis for the removal" and that removal was "an improper attempt to negate the effect" of the Bankruptcy Court's lifting of the automatic stay so that JPM could seek to enforce the Equitable Lien. Id. at *4 (citing, inter alia, Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)). Debtors then appealed the Bankruptcy Court's January 4, 2012, Order. The appeal was docketed in this Court on February 1, 2012.

      **B.**    **Continued Proceedings**

Although not directly relevant to the issues presently before this Court, the proceedings that continued in the state court and the Bankruptcy Court after the appeal was entered provide additional background. After the Bankruptcy Court lifted the automatic stay, the Court of Common Pleas held a hearing on October 31, 2011, at which Debtors were ordered to execute an amended mortgage and note to comply with that court's April 11, 2011, order. In re D'Angelo, 2012 WL 2951381, at *7. At a hearing on January 12, 2012, the Court of Common Pleas "determined that the Debtors had not complied with its Lien Order and found the Debtors to be in willful contempt of that order." Id. That court "awarded J.P. Morgan $4,000.00 in fees and

costs plus a $100 penalty for each day after January 12, 2012, that the Debtors failed to comply with the Lien Order." Id.  A sheriff's sale of the Doylestown property was scheduled for June 8, 2012. Id.

On February 12, 2012, Debtors filed a Complaint in the Bankruptcy Court in Adversary Case Number 12-211 in which they sought to have the Bankruptcy Court "review the legitimacy of J.P. Morgan's equitable lien." Id. at *5.  In response, JPM filed a motion to dismiss and a motion for sanctions. Id.  The Bankruptcy Court held a hearing on April 3, 2012, at which it granted the motion to dismiss on the ground that the Complaint was filed by an attorney "whose employment had not been requested by the Debtors or approved by [the Bankruptcy Court]." Id.  JPM withdrew its motion for sanctions voluntarily. Id.

On April 9, 2012, once the counsel issue was resolved, Debtors filed a second Complaint and, subsequently, an Amended Complaint in Bankruptcy Court, in which they sought to invalidate JPM's interests in the Doylestown property and to avoid the Equitable Lien. Id. at *2.  These filings began Adversary Case Number 12-301.  On April 15, 2012, Debtors filed a Motion for Preliminary Injunction, asking the Bankruptcy Court to enjoin the sheriff's sale scheduled for June 8, 2012. Id. at *1.  The Bankruptcy Court held an evidentiary hearing to address the Motion for Preliminary Injunction on May 8, 2012, and took the matter under advisement. Id.  Before the Bankruptcy Court could rule, on May 31, 2012, the Court of Common Pleas granted Debtors a stay of the sheriff's sale until September 14, 2012. Id. at *8.  The Bankruptcy Court held a hearing on June 5, 2012, to address JPM's Motion to Dismiss Adversary Case Number 12-301.  At the conclusion of the hearing, the Bankruptcy Court ruled from the bench, granting JPM's Motion to Dismiss and denying Debtors' Motion for a Preliminary Injunction. Id. at *3–4.  On July 19, 2012, the Bankruptcy Court issued a Memorandum amplifying the reasons for its oral

rulings.  See id.  Noting that it was "concerned that [the] adversary proceeding constitute[d] continued and unrepentant gamesmanship by the Debtors," the Bankruptcy Court held, inter alia, that it would invoke the permissive abstention doctrine and decline to rule on Debtors' claims regarding the validity of the mortgage.  Id. at *12–13.  It also held that it could not invalidate the Equitable Lien under the Rooker-Feldman doctrine because the state court had decided Debtors' claims regarding the Equitable Lien and Debtors were merely seeking to relitigate those claims in the Bankruptcy Court.  Id. at *12–14.

## III.   LEGAL STANDARD

A district court reviewing a Bankruptcy Court's judgment on appeal applies a "clearly erroneous" standard to findings of fact.  See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).  The Court reviews the legal determinations de novo.  J.P. Fyfe, Inc. v. Bradco Supply Corp., 891 F.2d 66, 69 (3d Cir. 1989).

## IV.   DISCUSSION

The Court addresses first JPM's Motion to Dismiss Appeal before turning to the merits of Debtors' appeal and, finally, JPM's Motion for Sanctions.[3]

### A.   Motion to Dismiss Appeal

#### 1.   Parties' Arguments

According to JPM, the appeal should be dismissed because "[t]he issues raised by Appellants are not reviewable and clearly establish that this Appeal was brought solely to cause JP Morgan to incur further expense."  (Mot. Dismiss 5.)  JPM argues that 28 U.S.C. §§ 1447(d)

---

[3] Appellants, in their reply brief, request oral argument and, inter alia, "the opportunity to present this Court with a firsthand account of JP Morgan's conduct."  (Reply Br. 6.)  Because "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument," the Court concludes that oral argument is not necessary.  See Fed. R. Bankr. P. 8012.

and 1452(b) and Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 129 (1995), deprive the Court of jurisdiction to hear the appeal.  Section 1447(d) provides in relevant part that, in general, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."  Section 1452(b), which governs removal of claims and causes of action related to bankruptcy proceedings, provides in relevant part that "[a]n order . . . remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title."  Because "[e]ach of the issues raised by Appellants attack the Bankruptcy Court's remand decision" and "[n]one challenge whether the Bankruptcy Court properly exercised its discretion in entering the Fee Order," JPM contends that the Court should treat the appeal as challenging the remand decision, not the award of fees, and dismiss it.  (Mot. Dismiss 6–7.)

Debtors agree with JPM that this Court cannot review a Bankruptcy Court's order remanding a removed case.  (Appellants' Resp. & Countermot. Sanctions ("Debtors' MTD Resp.") 13–14.)  However, they assert that they "present this Court with a single issue on review"—the award of fees under 28 U.S.C. § 1447(c) in connection with the order remanding the case, which is within this Court's appellate-review powers.  (Debtors' MTD Resp. 14–15.)

      **2.**     **Discussion**

Although the Court concludes that Debtors' appeal properly raises the issue of whether the Bankruptcy Court's award of fees was appropriate and that this Court has jurisdiction over that appeal, as discussed infra, the Court first briefly addresses an important point of constitutional law misapplied by both parties.

Debtors and JPM both assert that this Court lacks appellate jurisdiction over the Bankruptcy Court's remand decision. Section 1452(b)—governing removal of state court actions related to bankruptcy proceedings—provides that "[a]n order . . . remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise <u>by the court of appeals</u> under section 158(d), 1291, or 1292 of this title <u>or by the Supreme Court of the United States</u> under section 1254 of this title" (emphasis added). That section does not preclude review of a Bankruptcy Court's remand order by a United States District Court, nor could it do so without running afoul of the Supreme Court's decision in <u>Northern Pipeline Construction Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982). <u>Marathon</u> concluded that Congress impermissibly delegated Article III functions to bankruptcy courts through the Bankruptcy Act of 1978. <u>See</u> 458 U.S. at 74 (citing bankruptcy courts' authority to decide related state-law claims under then-effective 28 U.S.C. § 1471(b) (1976) as an example of "the erosion of Article III jurisdiction by the unilateral action of the political Branches"). In this case, the clear import of <u>Marathon</u>—confirmed by case law as well as the legislative history of § 1452(b)—is that this Court has appellate jurisdiction over the Bankruptcy Court's ruling.[4]

The Congressional Record confirms that the present version of 28 U.S.C. § 1452(b), enacted December 1, 1990, "forbid[s] only appeals from the district courts to the courts of appeals, not from bankruptcy courts to the district courts." 136 Cong. Rec. S17570-02, at *30 (daily ed. Oct. 27, 1990), <u>quoted in</u> <u>In re Borelli</u>, 132 B.R. 648, 649 (N.D. Cal. 1991); <u>see also</u> Fed. R. Bankr. P. 9027 advisory committee's notes to 1991 amendment ("§309(c) of the Judicial Improvements Act of 1990 [] amended §1452(b) so that it allows an appeal to the district court of a bankruptcy court's order determining a motion for remand."). Thus, "there are many cases

---

[4] <u>Things Remembered</u>, relied upon by JPM, addressed the appellate jurisdiction of the Courts of Appeals over District Courts and is thus inapposite. <u>See</u> 516 U.S. at 129.

recognizing that a bankruptcy court's order remanding a case to state court is appealable to the district court [under 28 U.S.C. § 1452(b)], but not beyond." In re Robertson, 132 B.R. 648, 649 (M.D. Ala. 2001) (collecting cases). Accordingly, contrary to the assertions of both parties, this Court would have jurisdiction over an appeal from the Bankruptcy Court's remand order, had one been timely taken.

Because JPM's Motion to Dismiss Appeal is derived from the faulty premise that the Court lacks jurisdiction over an appeal of a remand order issued by the Bankruptcy Court, JPM's Motion to Dismiss Appeal is denied. However, even assuming arguendo that JPM's argument had merit, the Court would still deny the Motion to Dismiss Appeal. "[I]t is well-settled that an award of attorney's fees occasioned by a wrongful removal [under 28 U.S.C. § 1447(c)] is an independently appealable order not subject to the prohibition against reviewing a remand order [by appellate courts]." Hart v. Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan, 360 F.3d 674, 677 (7th Cir. 2004) (citations omitted). That Debtors' appeal implicates the propriety of the remand order to some extent does not require dismissal of the appeal; courts recognize that "an evaluation of the merits of a remand order may be required to determine whether the [lower court's] award of attorney's fees was appropriate." Id. (citations omitted); see also Mints v. Educ. Testing Serv., 99 F.3d 1253, 1260 (3d Cir. 1996) ("[S]ection 1447(d), in precluding an appeal from an order of remand for a reason provided for remand in section 1447(c), does not preclude all evaluation of a remand order.").

The Court thus denies JPM's Motion to Dismiss Appeal and proceeds to the merits of the appeal.

### B. Merits of Appeal

#### 1. Parties' Arguments

Debtors assert that the Bankruptcy Court abused its discretion in awarding attorney's fees to JPM because Debtors "present[ed] substantial evidence to the [B]ankruptcy [C]ourt that the creditor used forged documents and benefits from the fraud on Debtors."[5] (Debtors' Br. 3.) The Court understands the thrust of Debtors' argument to be that Debtors had a "colorable basis for removal" either because the Equitable Lien "was voidable under the Bankruptcy Code as held in In re Raydell Fischer, [320 B.R. 52 (E.D. Pa. 2005)]," (Debtors' Br. 7), or because Debtors' effort to protect their "only asset" was a "core proceeding" under 28 U.S.C. § 157(b)(2), (Reply Br. 3–4).

JPM responds that Debtors' arguments miss the mark because:

> Judge Coleman did not base her decision to remand the state court litigation, nor her January 4, 2012, Order, on the merits of the underlying litigation. The Bankruptcy Court's decision was based on the fact that Appellants removed the state court litigation to the Bankruptcy Court only after relief from the automatic stay of 11 U.S.C. § 362(a) had been granted to allow the removed litigation to continue in state court—where the Bankruptcy Court previously ruled it should proceed.

(Appellee's Br. 2.) According to JPM, this Court should affirm the Bankruptcy Court's ruling because it "was not the result of clear error, errant conclusions of law, or a misapplication of the law to the facts of this case" and because the decision to award fees was within that court's discretion. (Id. at 8.)

---

[5] Debtors' briefs are devoted in large part to matters that are not relevant to the issue before this Court. Debtors criticize JPM's purchase of a mortgage based on an allegedly fraudulent deed, (see, e.g., id. at 10 ("[JPM] should not have bought the mortgage and note. It chose to do so because it had the power, might and practice to engage in 'wrongful foreclosure' . . . ."), and seek sympathy based on the lengthy state court litigation whose results have not favored them, (see, e.g., id. at 11 ("Instead, the bankruptcy court chooses to punish debtors exhausted by aimless and endless state court litigation.")).

11

**2.    Discussion**

A court's award of attorney's fees under 28 U.S.C. § 1447(c) is reviewed for abuse of discretion.[6] Roxbury Condo. Ass'n, Inc. v. Anthony S. Cupo Agency, 316 F.3d 224, 227 (3d Cir. 2007) (citing Mints, 99 F.3d at 1260). A decision is an abuse of discretion when it is based on "a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." Id. (citing LaSalle Nat'l Bank v. First Conn. Holding Grp., L.L.C., 287 F.3d 279, 288 (3d Cir. 2002)).

The Supreme Court set forth the following guidelines for an award of attorney's fees under § 1447(c):

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) (citations omitted).

In this case, the Bankruptcy Court held that Debtors lacked an objectively reasonable basis for seeking removal because when Debtors removed the case, the Bankruptcy Court "had already decided that the enforcement of JPM's Equitable Lien, and any defenses the Debtors may have thereto, should be decided in state court." In re D'Angelo, 2012 WL 27541, at *4.

---

[6] 28 U.S.C. § 1452, which governs removal and remand in bankruptcy cases, does not contain a fee-shifting provision, but 28 U.S.C. § 1447, which governs removal and remand more generally, does. Because the two statutes are read in pari materia, see Things Remembered, 516 U.S. at 127, fees are available to JPM under 28 U.S.C. § 1447(c), and Debtors have not challenged that issue.

When Debtors sought removal, they "simply rehashed their arguments that were made to this Court in opposition to JPM's Lift–Stay Motion." Id.  Although the present version of § 1447(c) does not require a finding of bad faith as a prerequisite to the imposition of sanctions, the Bankruptcy Court further held that "the Debtors' attempt to remove the Actions was a bad faith attempt to frustrate both JPM's prosecution of the Actions and the enforcement of this Court's Lift–Stay Order." Id. at *4–5.

This Court concludes that the Bankruptcy Court did not err in awarding fees.  Because the Bankruptcy Court had, on August 4, 2011, granted JPM relief from the automatic stay to seek enforcement of the Equitable Lien in the Court of Common Pleas, Debtors lacked an objectively reasonable basis for removal.  Despite that ruling, Debtors removed the state court case to the Bankruptcy Court and reasserted the same arguments the Bankruptcy Court had rejected a month earlier.  Debtors' Amended Notice of Removal confirms that the removal was, as the Bankruptcy Court held, procedural gamesmanship; Debtors sought merely to relitigate the state court case in the Bankruptcy Court, in contravention of the Bankruptcy Court's August 4, 2011, ruling.  (See, e.g., Amended Notice ¶ 13 ("Debtors' [sic] seek a declaratory judgment as to Debtors' individual and joint rights in property of the estate.  These rights have not yet been determined; however, Debtors are unable to proceed in the state court litigation due to costs and time constraints.").)

Debtors' removal of the state court case was not only an attempt to flaunt the Bankruptcy Court's prior ruling, it was also prohibited by case law the Bankruptcy Court cited in its oral ruling and in its January 4, 2012, opinion.  Those two cases, In re Best, 417 B.R. 259 (Bankr. E.D. Pa. 2009), and In re Abruzzo, No. 99-14011DWS, 1999 WL 1271761 (Bankr. E.D. Pa. Dec. 28, 1999), both addressed similar factual circumstances and concluded that remand was required.  See, e.g., In re Abruzzo, 1999 WL 1271761, at *4 ("The last but most compelling reason to

13

remand is to prevent Debtor's utilization of the removal statute to circumvent an order granting [creditor/mortgage holder] relief from the bankruptcy stay to pursue the foreclosure proceeding in state court. In granting [creditor/mortgage holder] relief from the stay, I made the determination that no legitimate purpose would be served by permitting Debtor's bankruptcy case to further delay the foreclosure proceeding in state court.").

Debtors have made no attempt to distinguish Best or Abruzzo in this appeal, relying instead on arguments that seek to relitigate further the matters before the state court—i.e., the validity of JPM's interest in the Doylestown property, whether based on the mortgage or the Equitable Lien. (See, e.g., Reply Br. 3–4 ("This travesty of justice with its false evidence has now permeated two courts, and visited a third, namely this Court, and is exacerbated by the award of attorney fees and the flagrant conduct of a financial giant who defies law, the rules of evidence and professional ethics with impunity.").) Debtors' citations to In re Raydell Fischer and 28 U.S.C. § 157(b)(2) offer some argument as to why the proceedings in state court could, in different circumstances or in a different procedural posture, have properly been brought before the Bankruptcy Court. Fatal to that argument, however, is Debtors' failure to justify or explain why they believed removal was appropriate despite the Bankruptcy Court's order lifting the automatic stay. Accordingly, this Court agrees with the Bankruptcy Court that Debtors "lacked an objectively reasonable basis for seeking removal," Martin, 546 U.S. at 141, and concludes that the Bankruptcy Court's award of attorney's fees under 28 U.S.C. § 1447(c) was appropriate.[7]

---

[7] Appellants have not challenged the amount of attorney's fees awarded to JPM, and thus this Court need not reach that issue.

### C. JPM's Motion for Sanctions and Debtors' Countermotion to Appellees' Motion for Sanctions

#### 1. Parties' Arguments

Each party asks the Court to impose sanctions on the other. JPM contends that Debtors' appeal is "utterly devoid of merit and could have been filed only to harass [JPM] and cause unnecessary expense." (JPM Mot. Sanctions 4.) According to JPM, sanctions are appropriate pursuant to Federal Rule of Bankruptcy Procedure 8020 because "[t]he only issue at play is procedural rather than substantive—whether challenging the Bankruptcy Court's decision to remand the [state court] litigation is reviewable, despite clear federal rules to the contrary." (Id. at 4 n.1, 5–6.) JPM further asserts that "the Appeal violates Appellants' and their counsel's fiduciary obligations to Appellants' bankruptcy estate" and that Debtors "have not challenged the Court's exercise of discretion in entering the fee order." (Id. at 8.)

Debtors filed an omnibus response to JPM's Motion for Sanctions that includes a "Countermotion to Appellee's Motion for Sanctions." The brief contains no viable legal argument, instead reframing Debtors' assertions regarding the merits of their state court case in inflammatory language. For example, Debtors assert that "JP Morgan's statement that this Appeal is 'utterly devoid of merit' and 'filed only to harass Appellee' belies the colossal difference in power and money between the innocent, bankrupt Appellants versus the almighty fraudster JP Morgan who employs unethical tactics and illegitimate documents in this case that it knows are actually and as a matter of law 'adjudged fraudulent and void.'" (Appellants' Resp. & Countermot. 9.)

According to Debtors, sanctions against JPM are appropriate because, "[b]y offering documents that it knows are forgeries, fraudulent and void as a matter of law, [JPM] perpetrates an outright fraud on this Court, the bankruptcy court and the state court." (Id. at 18.) Debtors

15

also allege that JPM's attorneys have violated the Pennsylvania Rules of Professional Conduct by, inter alia, "repeatedly offer[ing] evidence that its lawyers know to be false." (Id. at 19.)

### 2.      Analysis

After careful consideration, the Court denies both parties' requests for sanctions.

Federal Rule of Bankruptcy Procedure 8020 provides in relevant part, "If a district court . . . determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion . . . and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Consideration of an award of damages and costs under Bankruptcy Rule 8020 is a two-step process. In re Maloni, 282 B.R. 727, 734 (B.A.P. 1st Cir. 2002) (citing Collier on Bankruptcy ¶ 8020.06 (15th ed. rev. 2003)). First, the Court determines whether the appeal was frivolous by considering factors such as "bad faith on the part of the appellant; that the argument presented on appeal is meritless in toto; [] whether only part of the argument is frivolous[;] . . . whether appellant's argument: addresses the issues on appeal properly; fails to support the issues on appeal; fails to cite any authority; cites inapplicable authority; makes unsubstantiated factual assertions; makes bare legal conclusions; or, misrepresents the record." Id. (citing Collier on Bankruptcy, supra, ¶ 8020.04[1]). The second step is to determine whether the procedural requirements set forth in Rule 8020 are met. Id.

Because Bankruptcy Rule 8020 incorporates the language of Federal Rule of Appellate Procedure 38, courts are also guided by appellate courts' interpretation of Appellate Rule 38. Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem Corp., Civ. No. 02-1580JJF, 2003 WL 22928045, at *1 (D. Del. Nov. 25, 2003) (quoting Collier on Bankruptcy, supra, ¶ 8020.02). "'Damages [under Rule 38] are awarded by the court in its discretion . . . as a matter of justice to

the appellee.'" Beam v. Bauer, 383 F.3d 106, 108 (3d Cir. 2004) (quoting Hilmon Co. (V.I.) Inc. v. Hyatt Int'l, 899 F.2d 250, 253 (3d Cir. 1990)). "The rationale of Rule 38 is simply that when parties suffer pecuniary loss by paying attorney fees to defend a valid judgment against a frivolous appeal, they are as entitled to be awarded damages as is a victim seeking compensation for any other financial loss incurred by the acts of a tortfeasor." Id. "It does not matter whether [appellant] filed this appeal out of malice, ignorance, or deceit; it is the merit of [the] argument on appeal that determines whether [appellant] carries the day. [Rule 38] is not a punitive provision." Id.

The Court declines to impose sanctions on Debtors for their appeal. This litigation has been ongoing in various courts for at least six years and involves Debtors who have "exhausted all of their available cash." (Appellants' Resp. & Countermot. 4.) Debtors' appeal of an insignificant award of attorney's fees—by which they incurred additional attorney's fees and further multiplied the litigation—was undoubtedly ill-advised and does nothing to advance their goal of avoiding JPM's interest in the Doylestown property. Nonetheless, an award of damages and costs is not appropriate for two reasons. First, JPM relies on the mistaken assertion that the appeal requires this Court "to exercise jurisdiction of issues that are explicitly not subject to review pursuant to well-established federal law." (Mot. Sanctions 6.) As discussed supra, 28 U.S.C. § 1452(b) would not bar this Court's review of a remand order by the Bankruptcy Court. Moreover, an award of fees under 28 U.S.C. § 1447(c) is an appealable order that litigants have, in some cases, convinced appellate courts to overturn. See, e.g., First Am. Title Ins. Corp. v. JP Morgan Chase & Co., 384 F. App'x 64, 66–67 (3d Cir. 2010) (reversing award of attorney's fees against JP Morgan after finding that theory of removal advanced by JP Morgan was not "objectively unreasonable," even if rejected). Second, the Court concludes that an additional

17

award against Debtors will serve no useful purpose, especially given their financial straits. This litigation is ongoing in both the Bankruptcy Court and the Court of Common Pleas of Bucks County. The state court recently "awarded J.P. Morgan $4,000.00 in fees and costs plus a $100 penalty for each day after January 12, 2012, that the Debtors failed to comply with the Lien Order." In re D'Angelo, 2012 WL 2951381, at *7. The record shows that the Bankruptcy Court has been exceedingly patient but has given notice that it will no longer tolerate gamesmanship from Debtors. See id. at *14 ("The simultaneous litigation of this issue in the State Court Proceedings constitutes a waste of judicial resources and constitutes a waste of estate resources. The Debtors' estates will necessarily be harmed by the duplication of efforts by their special counsel in the State Court Proceedings and their general counsel in this adversary proceeding."). Both the Bankruptcy Court and the Court of Common Pleas have sanctioned Debtors for their conduct and retain the authority to do so again in the future if necessary. This Court thus concludes that an award of sanctions under Bankruptcy Rule 8020 is not appropriate.[8]

    The Court also denies Debtors' Countermotion to Appellees' Motion for Sanctions. Debtors' motion—which does not specify the provision of law on which it is based—is premised on the contention that JPM has repeatedly presented fraudulent documents to the state court, the Bankruptcy Court, and this Court. This Court, like the Bankruptcy Court, declines to address that assertion. It is a matter for the state court to evaluate, not a District Court considering a poorly argued countermotion for sanctions during an appeal from the Bankruptcy Court. See In

---

[8] JPM also argues in passing in a footnote that sanctions are appropriate under 28 U.S.C. § 1927, which allows the Court to impose "costs, expenses, and attorney's fees" when an attorney "multiplies the proceedings in any case unreasonably and vexatiously." (Mot. Sanctions 4 n.1.) For the reasons set forth above, the Court also concludes that § 1927 sanctions are not appropriate. See Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 142 (3d Cir. 2009) (requiring a finding that an attorney's conduct is "of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation" before § 1927 sanctions are imposed) (citations and quotation marks omitted).

re D'Angelo, 2012 WL 2951381, at *15 ("Nothing in the record suggest that the Debtors did not have a full opportunity to raise the alleged infirmities [in the mortgage documents] in the State Court Proceedings. For this reason, this Court [the Bankruptcy Court] must assume that when deciding to grant J.P. Morgan its Equitable Lien the state court considered the defenses now raised by the Debtors. . . . The fact that the Debtors did not raise these defenses, or the fact that the Bucks County Court found them unavailing, may not be remedied by this Court.").

Thus, the Court denies both JPM's Motion for Sanctions and Debtors' Countermotion to Appellees' Motion for Sanctions.

## V.   CONCLUSION

For the reasons stated above, the Court affirms the January 4, 2012, Order of the Bankruptcy Court and denies the parties' motions in all other respects.

An appropriate Order follows.